IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JORDAN O. HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-490 (MN) |
| | ) |
| CHRISTOPHER DONALDSON, et al., | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION</u>**

Jordan O. Harris, Pro Se Plaintiff.

Kenneth Lee-Kay Wan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendants.

August 18, 2021
Wilmington, Delaware

*Maryellen Noreika*
**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff Jordan O. Harris ("Plaintiff" or "Harris"), an inmate at James T. Vaughn Correctional Center, proceeds *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5, 9). He commenced this action on April 3, 2018. (D.I. 3). The operative pleading consists of Docket Items 3, 6, and 19. Plaintiff alleges excessive force and failure to protect/intervene claims against Defendants Christopher Donaldson ("Donaldson") and Mary McGuire ("McGuire").[1] (*See* D.I. 15, 16, 22). Presently before this Court are the parties' cross-motions for summary judgment as well as Defendants' motion for sanctions and an order to show cause and Plaintiff's motion for issuance of subpoena, motion for concealment of expert, and request for counsel. (D.I. 66, 68, 69, 81, 93, 95). Briefing is complete.

**I.   BACKGROUND**

As alleged in the Complaint, on July 26, 2016, Defendants were "conducting an operation in pursuit of fugitive with warrants." Plaintiff alleges that he was not the fugitive and after a "minor pursuit" he was pulled into a vacant area and his vehicle stopped after being rammed several times. Donaldson ordered Plaintiff to place his hands out of the window in clear view. Donaldson approached Plaintiff's vehicle, opened the door, and ordered his partner K-9 Ripper ("Ripper") to attack. Ripper bit Plaintiff, pulled him to the ground, and attacked him as Donaldson repeatedly told Ripper to "get 'em boy." At some point, McGuire ordered the assault to stop, and Donaldson restrained Ripper and carried him back to the patrol car. Plaintiff sustained numerous injuries and received treatment at a hospital. He seeks compensatory and punitive damages as well as injunctive relief.

---

[1] Plaintiff named a number of defendants and raised a number of claims. With the exception of the excessive force and failure to intervene/protect claims against Donaldson and McGuire, all other Defendants and claims have been dismissed.

1

II.     **FACTS PRESENTED BY THE PARTIES**[2]

On July 26, 2016, Donaldson and McGuire, members of the Governors' Task Force, drove separate vehicles as they went to apprehend fugitive Dana Lagrand ("Lagrand") who lived in Milford, Delaware.  (D.I. 84 at 112).  Probation Officer David Angelo ("Angelo") rode with McGuire in an unmarked Delaware State Police Tahoe, followed by Donaldson and Ripper, and Cpl. Jeffrey Ballinger ("Ballinger") in a marked Delaware State Police Tahoe.  (D.I. 84 at 10; D.I. 84-1 at 78)).  The last vehicle, an unmarked Tahoe, was driven by Cpl. Sean O'Leary ("O'Leary") and was equipped with an activated mobile video recorder ("MVR") system. (D.I. 84-1 at 80-81; D.I. 84-3 at 99).

The MVR recorded a pursuit that began after a car driven by Plaintiff was seen at or near Lagrand's residence and that left after McGuire and Angelo had exited their vehicle and approached Plaintiff's vehicle, and McGuire had shone her strobe flashlight into the vehicle. (D.I. 84-1 at 19, 78, 79; D.I. 84-3 at 99).  McGuire and Angelo returned to their vehicle, began to pursue Plaintiff's car, Donaldson and Leary joined the pursuit, and both vehicles' emergency lights were activated.  (D.I. 84 11, 114, 115; D.I. 84-1 at 19, 81).  At some point, Donaldson's vehicle became the lead vehicle, and ultimately Donaldson's Tahoe rear-ended Plaintiff's vehicle and it stopped.  (D.I. 84 at 14).

Donaldson testified that the area was dark, and he had seen Plaintiff reaching into the back seat of the vehicle so, as he exited his vehicle, he drew his firearm and pressed the release button on the rear driver side door of his Tahoe which released Ripper.  (D.I. 84 at 121; D.I. 84-3 at 99;

---

[2]     Many of the exhibits submitted by the parties are identical exhibits.  The court will cite to Defendants' exhibits when the exhibits were submitted by all parties and to Plaintiff's exhibits when only he submitted an exhibit.  Also, this Memorandum Opinion cites the official court docket found in the header of each docketed page and not the cites used by the parties.

2

D.I. 84-4 at 46). At first, Ripper ran past Donaldson, but he returned upon command. (D.I. 84-3 at 99; 84-4 at 46). Plaintiff testified that Donaldson ordered Plaintiff to show his hands and he put them outside the window. (D.I. 84-4 at 46-47). After Donaldson and Ballinger had exited the vehicle, they commanded Plaintiff and passenger Akeem Bunch ("Bunch") to show their hands. (D.I. 84 at 15, 40, 121; D.I. 84-3 at 99). Bunch fully complied. (D.I. 84 at 40, 122).

By this time, McGuire's Tahoe was behind Donaldson, and she exited her vehicle when she saw Ripper exit Donaldson's Tahoe. (D.I. 84-1 at 84). Her view was obscured until she was able to go to the front of Donaldson's vehicle. (*Id*.). McGuire testified that she heard Donaldson yelling the command "show me your hands" several times. (*Id*.). She did not see Plaintiff's hands as she moved towards Plaintiff's vehicle. (D.I. 84-1 at 84, 85, 114, 115).

Donaldson testified that Plaintiff initially raised his hands but then dropped them down out of his line of sight. (D.I. 84 at 15, 16, 40, 121, 122). Donaldson testified that as Plaintiff lowered his hands, he continued to command Plaintiff to put his hands up, but Plaintiff refused to comply and show his hands which were out of Donaldson's view. (D.I. 84 at 122). Donaldson testified his concern was that Plaintiff had a weapon because he had not seen Plaintiff discard anything from the vehicle during the pursuit and that he was being lured in closer so Plaintiff could use a weapon against him. (D.I. 84 at 122, 123).

Because Donaldson could not see Plaintiff's right hand, and Plaintiff refused to show his hands, Donaldson deployed Ripper to perform a bite apprehension of Plaintiff. (D.I. 84 at 16, 123, 146, 147). Donaldson testified that he pulled open the driver side door of Plaintiff's vehicle and Ripper apprehended (*i.e.*, bit or attached to) Plaintiff on his left side, the only part of his body accessible at that time. (D.I. 84-1 at 84; D.I. 84-4 at 47, 48). Plaintiff testified that when Donaldson opened the door he put his hands down a little bit, but they were still visible, both inside

3

and outside the window and above his shoulders. (D.I. 84-4 at 48). Plaintiff testified that at no point did he put his hands on the steering wheel. (D.I. 84-4 at 49-50). Plaintiff testified that McGuire could not have stopped Ripper's initial apprehension due to the time she stopped her vehicle and because she was between the back door of Donaldson's vehicle and Plaintiff's car when Donaldson commanded Ripper to apprehend and opened Plaintiff's vehicle door. (D.I. 84-1 at 116, 117; D.I. 84-4 at 160).

According to Donaldson, Plaintiff, who was not wearing a seatbelt, refused to exit the vehicle and when Plaintiff would not exit the vehicle willingly Donaldson grabbed Plaintiff by his shirt and arm and forcibly removed him. (D.I. 84 at 122, 123, D.I. 84-1 at 1). Plaintiff testified that when Donaldson pulled him out of the car he landed on top of Ripper. (D.I. 84 at 124, D.I. 84-1 at 2, 3, 85; D.I. 84-4 at 60, 227). Donaldson testified that when Plaintiff landed on Ripper, Ripper released Plaintiff and, uncommanded, Ripper attached or re-apprehended Plaintiff on his left leg. (D.I. 84-1 at 2, 4, 5). Plaintiff believes his hands were at his side, parallel to his body. (D.I. 84-4 at 77-79). Plaintiff testified that Donaldson said "get 'em boy" multiple times after the first bite but before the second bite. (D.I. 84-4 at 58-59, 61). Donaldson testified that during this time he continued to give Plaintiff commands to show his hands and Plaintiff did not comply. (D.I. 84 at 124, 125). McGuire testified that she could not see Plaintiff's hands and she remained concerned that Plaintiff had something that could hurt them. (D.I. 84-1 at 85). Plaintiff testified that after Ripper released the left leg, someone told him to turn onto his stomach and that during this time his hands were not underneath him and were visible up over his head. (D.I. 84-4 at 63, 81). Plaintiff testified that he did not try to kick Ripper or kick Ripper off. (D.I. 84-4 at 64). Plaintiff was bitten a third time on his right buttock. (D.I. 84-4 at 70, 74).

4

Plaintiff testified that once Ripper detached, he detached and reattached multiple times. (D.I. 8-4 at 82).

Donaldson testified that Plaintiff continued to resist showing his hands and, when he started to kick and fight, Ripper, uncommanded, released and re-apprehended Plaintiff on his right side. (D.I. 84 at 124, 125, D.I. 84-1 at 6). Donaldson testified that, "[w]hen there's kicking and flailing, it's common for a dog to release and reengage." (D.I. 8-1 at 13). Donaldson testified that Plaintiff stopped resisting when Ripper re-apprehended Plaintiff on his right side and Donaldson gained control of Plaintiff. (D.I. 84 at 125; D.I. 84-1 at 8). Plaintiff testified that McGuire then instructed Donaldson to have Ripper release, Donaldson immediately complied, gave the commands for Ripper to release, and Ripper released immediately once Plaintiff's hands were visible. (D.I. 84 at 124; D.I. 84-1 at 8; D.I. 84-4 at 83, 89, 90). Similarly Donaldson testified that Ripper no longer engaged "once we gained compliance from [Plaintiff], we gained control of his hands." (D.I. 84-1 at 13). Once there was control of Plaintiff's hands, he was handcuffed. (D.I. 84-1, 85). During this time, Donaldson restrained Ripper but remained nearby. (D.I. 84-3 at 99).

Plaintiff testified at his deposition that you can tell when he was pulled from the vehicle because you can see a puff of dust on the MVR footage. (D.I. 84-4 at 162). This Court's review indicates that the puff of dust is seen on the MVR twenty-three seconds after Ripper disappears from view behind Donaldson's open Tahoe door. (D.I. 84-3 at 99). This Court's review further indicates that the MVR shows the entire incident from Ripper's initial deployment until final release was thirty-eight seconds. (*Id.*).

Plaintiff testified that once he was handcuffed, Ripper did not bite him again. (D.I. 84-4 at 157). Plaintiff was transported to the hospital where he was treated and released. (D.I. 84-1

5

at 11). An arrest warrant was obtained and Plaintiff was criminally charged and found guilty of resisting arrest in addition to other crimes. (D.I. 84-3 at 60; D.I. 84-4 at 216).

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, this Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and a factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

The nonmoving party bears the burden to establish the existence of each element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In doing so, the non-moving party must present specific evidence from which a reasonable fact finder could conclude in his favor. *Anderson*, 477 U.S. at 248; *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

In qualified immunity cases, the existence of a videotape recording presents an "added wrinkle" to the general requirement that courts construe facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. at 378. "Where there is a video recording of the

relevant events, the Court views the facts as depicted in the recording, rather than in the non-movant's favor, whenever the recording 'blatantly contradict[s]' the non-movant's version such that 'no reasonable jury could believe it.'" *Knight v. Walton*, 660 F. App'x 110, 112 (3d Cir. 2016) (quoting *Scott*, 550 U.S. at 380-81).

## IV. DISCUSSION

Defendants move for summary judgment on the grounds that: (1) they had reasonable articulable suspicion to stop Plaintiff and probable cause to arrest him after he fled;[3] (2) the claims against them in their official capacities are barred by the Eleventh Amendment; (3) the record does not support a finding that excessive force was used against Plaintiff during his arrest; and (4) they did not violate a clearly established right and are entitled to qualified immunity. Plaintiff moves for summary judgment on the grounds that Defendants properly failed to address his assertions and/or incorrectly states claims and assertions and therefore, the facts should be considered undisputed.

### A. Eleventh Amendment

Defendants seek summary judgment to the extent the claims are raised against them in their official capacities. To support his position that the claims are not barred by the Eleventh Amendment, Plaintiff refers to 11 Del. C. § 461 and argues that the claim was previously adjudicated. (D.I. 89 at 17).

The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State*

---

3   This Court does not address Defendants first ground for summary judgment as it is not before the Court. The only claims raised are excessive force and failure to protect/intervene.

7

*Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). Accordingly, § 1983 claims for monetary damages against a state official in his official capacity are barred by the Eleventh Amendment. *See id.*

The official capacity claims against Defendants are barred by the Eleventh Amendment, and, therefore, they will be granted summary judgment on this issue. Plaintiff's motion for summary judgment on the issue will be denied.

**B.** **Excessive Force**

Defendants contend summary judgment is appropriate because McGuire did not use excessive force on Plaintiff and the force used by Donaldson was objectively reasonable under the facts of the case. Plaintiff argues that summary judgment is warranted on his behalf because he was compliant, there is no dispute that Donaldson used excessive force, and McGuire has liability by reasons of supervisor liability.[4]

A claim that law enforcement officers used excessive force during the course of an arrest is analyzed under the Fourth Amendment "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is

---

[4] To support his position that Donaldson used excessive force, Plaintiff submitted testimony from a trial in a case involving a different criminal defendant's arrest and the use of a K-9. (D.I. 90 at 680-808). The testimony occurred approximately five months after Plaintiff's arrest and is not relevant to this case. Plaintiff also submitted what he calls an "expert report." It is not considered. The report is not a report by an expert, but Plaintiff's handwritten summary of an interview he conducted with the expert, apparently via Facebook. (D.I. 93-1 at 3). It is not dated, nor signed by the expert.

'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (alteration supplied). Other factors to consider in determining the reasonableness of the force used includes "the duration of the [officer's] action, whether the action takes place in the context of effectuating an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006). The events surrounding the use of force must be considered from "the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight . . ." with allowance for the "fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004). *Id.* (quoting *Graham*, 490 U.S. at 396-397) (internal quotation marks omitted); *Couden v. Duffy*, 446 F.3d at 497.

"The use of a police dog to bite and hold a suspect is not *per se* unreasonable." *Moore v. Vangelo*, 222 F. App'x 167, 170 (3d Cir. 2007) (collecting cases). Also, uncommanded actions of a police dog are not intentional seizures which are required for a Fourth Amendment violation. *See Brower v. County of Inyo*, 489 U.S. 593, 597 (1989); *Foskey v. Little*, 2011 WL 3438415, at *5 (D. Del. 2011) (officer did not use excessive force where the K-9 took action without command); *Neeley v. Samis*, 183 F. Supp. 2d 672, 681 (D. Del. 2002) (officers did not use

excessive force where the K-9 responded to the plaintiff's struggling by biting without being commanded).

Donaldson, the handler of Ripper, was in the caravan of vehicles on July 26, 2016, when they began the pursuit of Plaintiff who was seen in a car at or near the home of a fugitive. Plaintiff did not voluntarily stop during the pursuit; rather, his car was incapacitated after it was rear ended. Donaldson ordered Plaintiff to show his hands. Plaintiff maintains that his hands were not hidden while Donald maintains that Plaintiff initially complied and then moved his arms from view and Donaldson did know whether Plaintiff was armed. Donaldson gave Plaintiff multiple commands to show his hands and Plaintiff maintains that he complied but also acknowledges that he never put his hands on the steering wheel. Donaldson, concerned that Plaintiff had a weapon and was luring Donaldson to the car to use a weapon against him, commanded Ripper to apprehend Plaintiff, and Ripper apprehended Plaintiff on his left side. When Plaintiff refused to exit the vehicle, Donaldson pulled Plaintiff from the vehicle and Plaintiff fell on top of Ripper. Plaintiff testified that Donaldson repeated the words "get 'em boy" but the record does not indicate that this is a command for Ripper to reengage. Rather, Ripper released Plaintiff when Plaintiff fell on him and, uncommanded, re-apprehended Plaintiff on his left leg, all the while Donaldson continued to command Plaintiff to show his hands. According to Plaintiff, after Ripper's initial detachment, he attached and reattached multiple times. At some point, Plaintiff was bitten a third time on his right buttock and that is when Donaldson gained control of Plaintiff. The record evidence does not indicate that Donaldson gave a second or third command to reengage. McGuire instructed Donaldson to give the release command, and he did. Plaintiff was handcuffed. All parties agree that once Plaintiff was handcuffed Ripper did not apprehend Plaintiff again. Thirty-eight seconds of time passed from the time Ripper jumped from the car to the time of the final release.

Given these facts, the use of Ripper to apprehend and detain Plaintiff was objectively reasonable. Indeed, to an objective observer, it cannot be denied that Plaintiff appeared to pose a safety threat given his erratic driving and his attempt to evade police by flight. *See Graham*, 490 U.S. at 396. Plaintiff's actions led Donaldson to believe that Plaintiff may have been armed. Finally, the entire incident occurred very quickly – within seconds. The force used by Donaldson was objectively reasonable under the circumstances of the particular situation. Because Plaintiff has not stated a constitutional violation, Defendants' motion for summary judgment as it relates to Plaintiff's excessive force claim will be granted and Plaintiff's motion for summary judgment will be denied.[5]

### B. Failure to Intervene

As discussed, summary judgment is appropriate on the issue of excessive force. Although "legally distinct, the fate of [a] plaintiff's failure to intervene claim is closely linked to that of [an] excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene."[6] *See Abdullahi v. City of Madison*, 423 F.3d 763, 767-68 (7th Cir. 2005); *Olmo v. Paterson Police Dep't*, No. CV 16-9414 (JMV), 2018 WL 1806054, at *6 (D.N.J. Apr. 17, 2018). Therefore, the failure to protect/intervene necessarily fails and Defendants' motion for summary judgment on this issue will be granted.

---

[5] There is no record evidence that McGuire used force of any type against Plaintiff, much less excessive force.

[6] The failure to intervene/protect claims also fails based upon the evidence of record given the rapidity with which the events at issue took place – thirty-eight seconds, making it virtually impossible for McGuire to intervene once Donaldson gave the command to attach. The record simply does not demonstrate that McGuire had a realistic opportunity to take measures to intervene in the events at hand. *See Smith v. Messinger*, 293 F.3d 641, 652 (3d Cir. 2002) (stating "if [he] can show at trial that an officer attacked him while [another officer] ignored a realistic opportunity to intervene, he can recover" (quoting *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (internal quotation marks omitted))).

## V. CONCLUSION

For the above reasons, this Court will: (1) deny as moot (a) Defendants' motion for sanctions and an order to show cause (D.I. 66), (b) Plaintiff's motion for issuance of subpoena (D.I. 68), (c) Plaintiff's motion or concealment of expert (D.I. 69), and (d) Plaintiff's request for counsel (D.I. 95); (2) grant Defendants' motion for summary judgment (D.I. 81)[7]; and (3) deny Plaintiff's motion for declaratory and/or summary judgment (D.I. 95).

An appropriate order will be entered.

---

[7] This Court does not address the issue of qualified immunity having determined summary judgment for Defendant is appropriate on other grounds.